UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VINCENT HILL,

      Plaintiff,

v.                                  Case No. 08-CV-11632-DT

LINCOLN PARK POLICE OFFICERS
JEFFREY MUELLER AND S. NOE, et al.,

      Defendants.
                                               /

**OPINION AND ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pending before the court is Defendants' "Motion for Summary Judgment." The matter has been fully briefed, and the court concludes a hearing on the motion is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons below, the court will grant Defendants' motion for summary judgment.

**I. BACKGROUND**

Because this matter comes before the court on Defendants' motion for summary judgment, the factual background is derived largely from Plaintiff's motion and deposition testimony, presented in the light most favorable to Plaintiff. Fed. R. Civ. P. 56. Other uncontested background facts may have been proffered or pointed out by Defendants. On March 16, 2008, Plaintiff Vincent Hill, fifty-three years old, was exiting a Walgreens drug-store in Lincoln Park when he encountered Defendant Officer Jeffrey Mueller of the Lincoln Park Police Department. The Walgreens store is located adjacent to a National City Bank, which had been robbed just moments before. Plaintiff,

an African-American male, was wearing a blue University of Michigan sweatshirt with a large yellow "M" on its back.  Defendant Mueller, having just received a broadcast transmission that the nearby National City bank had been robbed by an African-American male clothed in a "blue windbreaker or coat with yellow writing on it," (Defs.'s Mot., Ex. B at p. 25), observed Plaintiff, who matched the description.  Defendant Mueller ordered Plaintiff to halt but instead of complying, he ran into an adjacent parking area and stood hiding behind a tree.  Soon after, Defendant Mueller arrived at Plaintiff's location and was joined by Defendant Officer Noe.  Plaintiff raised his hands and walked towards the officers with his hands raised.  According to Plaintiff, the Defendant officers did not give Plaintiff any orders, nor did Plaintiff speak to the officers or take an aggressive stance.  The Defendant officers "put [Plaintiff] on down to the ground" and attempted to place him into handcuffs.  One of Plaintiff's arms was trapped under him during the fall to the ground and he was unable to give it to the Defendant officers for handcuffing.  During the struggle to handcuff Plaintiff, he claims to have been hit with an unknown object on the side of his back.[1]  Eventually Plaintiff was handcuffed and taken to the nearby bank for identification.  Plaintiff was not identified as the suspect bank robber but Defendants did determine that Plaintiff had an outstanding arrest warrant from the Ecorse Police Department and therefore he was retained in custody.

---

[1] Plaintiff's brief argues that he was "struck multiple times with an unknown object," (Pl.'s Resp. at 9.)  but Plaintiff's testimony supports only that he was hit, not how many times or with what. (*Id.,* Ex. 1 at p. 47, "Q. How many time were you hit? A. I don't remember. Q. More than one? A. I don't know.")  Also, Plaintiff's emergency room "context" sheet indicates that Plaintiff reported to the physician that he claimed to have been struck with "fists" and "kicked."  No mention was made of an "object." (*See* Pl.'s Resp., Ex. 2). Taking the facts in a light most favorable to Plaintiff, however, the court assumes that he was struck at least, but possibly only, once.

Approximately one day later, Plaintiff was released and sought medical attention. Apparently as a result of the incident, Plaintiff suffered two broken ribs and a fracture to the traverse process of three lumbar vertebrae.  Plaintiff brought suit against the Defendant officers and their employer, the City of Lincoln Park, under a number of causes of actions.  On April 25, 2008, this court remanded all but one cause of action to state court.  (4/25/08 Order.)  Plaintiff's remaining cause of action, brought under 28 U.S.C. § 1983, is actually comprised of three separate claims.  Plaintiff complains that he was falsely arrested and/or imprisoned, that the arresting officers used excessive force, and that the City of Lincoln Park Police Department maintains a "policy or practice of engaging in systematic deprivation of civil rights." (Pl.'s Compl. at 7.)

## II.  STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).  "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial. *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party must first show the absence of a genuine issue of material fact. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000) (citing *Celotex*, 477 U.S. at 323). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). He must put forth enough evidence to show that there exists a genuine issue to be decided at trial. *Plant*, 212 F.3d at 934 (citing *Anderson*, 477 U.S. at 256). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52 (1986).

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment – the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict – 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" (alteration in original)(citation omitted)). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

### III. DISCUSSION

Although Plaintiff asserts three distinct causes of action, each is brought under 42 U.S.C. § 1983. Title 42 of the United States Code, section 1983 requires Plaintiff to prove that the Defendants, acting under "color of law," deprived him of a clearly established right secured by the Constitution or the laws of the United States. 42 U.S.C. § 1983; *Rhoads v. Bd. of Educ. of Mad River Local Sch. Dist.*, 103 F. App'x 888, 894 (6th Cir. 2004); *Markva v. Haveman*, 317 F.3d 547, 552 (6th Cir. 2003). It is undisputed that Defendant officers were acting under color of law when Plaintiff was arrested. Therefore, the court's focus will center on whether Plaintiff can prove a deprivation of a clearly established Constitutional right.

### A. False Arrest and/or Imprisonment

Plaintiff first complains that the "defendant officers' conduct . . . constituted . . . false arrest/imprisonment which amounted to an abuse of lawful authority under color of law in violation of 42 U.S.C. § 1983." (Pl.'s Compl. at 7.) The Fourth Amendment to the United States Constitution establishes the "right of the people to be secure in their persons . . . against unreasonable searches and seizures" unless the actor has "probable cause, supported by Oath or affirmation, and particularly describing . . . the persons or things to be seized." U.S. Const. amend. IV. Such probable cause can exist where "there were sufficient facts and circumstances to warrant a prudent officer to believe that the suspect had committed or was about to commit an offense." *Meadows v. Thomas*, 117 F. App'x 397, 402 (6th Cir. 2004) (*citing Beck v. Ohio*, 379 U.S. 89, 90 (1964)). Thus, if the Defendant officers had sufficient facts to conclude Plaintiff had either committed, or was about to commit a crime, their seizure of his person would not give rise to a Constitutional violation.

5

Although Plaintiff refused Defendants' request that he concur that there was no basis to assert that his arrest and detention made out a Constitutional violation (*see* Defs.'s Mot. at 3, ¶ 9), Plaintiff's response to the motion contains no hint of an argument to support his claim.  As Defendants' reply makes clear, "Plaintiff has abandoned [the] claim or conceded [sic] to Defendants' position that the investigatory stop, detention and arrest of Plaintiff were lawful."  (Defs.'s Reply at 1.)  In light of Plaintiff's own testimony, it would not be possible to argue otherwise.  Defendant Mueller was seeking a bank robbery suspect described as an African-American male wearing a blue coat with yellow writing.  (Defs.'s Mot., Ex. B at p. 25.)  Plaintiff is an African-American male who was wearing a blue sweatshirt with yellow writing who was observed in an area directly adjacent to the bank.  (Pl.'s Resp., Ex. 1 at p. 28.)  This alone, in the temporal context of the bank robbery, provided Defendant Mueller "sufficient facts . . . to believe that [Plaintiff] had committed . . . an offense."  *Meadows*, 117 F. App'x at 402.  When Defendant Mueller asked Plaintiff to stop, Plaintiff admits he ran into a nearby parking area and hid behind a tree.  (Pl.'s Resp. at 7; Ex 1 at pp. 38, 79.)  There can be little debate that ample probable cause for a lawful arrest exists for a person who almost exactly matches the description of a recent and nearby bank robber, let alone when that person tries to evade the police and attempts to hide himself from pursuing officers behind a tree.  *Cf. Graham v. M.S. Conner*, 490 U.S. 386, 396 (1989) ("The Fourth Amendment is not violated by an arrest based on probable cause, even though the wrong person is arrested.").  The arrest of Plaintiff did not violate any Fourth Amendment right.  Nor does Plaintiff's continued detention, after determining he was not the actual bank robber, violate his Constitutional rights.  Defendant officers determined

6

Plaintiff had an outstanding warrant from the Ecorse Police Department, justifying his short detention. (Defs.'s Mot. at 8.) Therefore, in light of facts and circumstances available to the arresting Defendant officers and Plaintiff's own behavior at the time of the incident, the court concludes there is no genuine issue of material fact that Defendants had probable cause in arresting and detaining Plaintiff. Plaintiff's claim of a false arrest and/or imprisonment fails as a matter of law.[2]

### B. Excessive Force

Plaintiff contends secondly that the Defendant officers used excessive force in subduing him during his arrest. Defendants, in their summary judgment motion, argue that their actions do not constitute excessive force. (Defs.'s Mot. at 9.) In the alternative, Defendants argue that even if their actions rise to the level of a Constitutional violation, they are immune from suit under the doctrine of qualified immunity. (*Id.* at 12.)

Claims that law enforcement officers have used excessive force in effectuating an arrest are analyzed under the Fourth Amendment and its reasonableness standard. *Graham*, 490 U.S. at 395. This standard "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotations omitted); *Williams v. City of Grosse Pointe Park*, 496 F.3d 482, 490-91 (6th Cir. 2007). While

---

[2] Plaintiff's refusal to concur in abandoning this issue when asked, combined with Plaintiff's subsequent failure to raise any opposition to Defendants' fully-briefed motion, appears to constitute an "unreasonable withholding of consent" for which "the court may tax costs . . . ." *See* E. D. Mich. LR 7.1(a)(3). Defendants may elect to file a motion in support of such proposition after the judgment is entered.

there is no doubt that law enforcement officers' right to make an arrest "carries with it the right to use some degree of physical coercion or threat thereof to effect it," *Graham*, 490 U.S. at 396, the ultimate application of the standard requires "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Any analysis must reflect "the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Thus, "there is no easy-to-apply legal test in the Fourth Amendment context, and instead judges are to look to the factual and practical considerations of everyday life which reasonable and prudent men, not legal technicians, act." *Davenport v. Causey*, 521 F.3d 544, 551-52 (6th Cir. 2008) (internal quotations and citations omitted).

At this summary judgment stage, this court should "determine the relevant set of facts and draw[ ] all inferences in favor of the nonmoving party to the extent supportable by the record." *Dunn v. Matatall*, 549 F.3d 348, 353 (6th Cir. 2008) (*quoting Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769, 1776 n.8 (2008)). The conclusion whether Defendants' actions were reasonable under the Fourth Amendment is purely a question of law. *Dunn*, 549 F.3d at 353. To that end, Plaintiff's own testimony establishes that on March 16, 2006, he was in a parking lot in close proximity to a National City Bank. (Pl.'s Resp., Ex. 1 at pp. 28-29.) He was wearing a blue University of Michigan sweatshirt, with a "big yellow M" on its back. (*Id.* at p. 28.) Plaintiff encountered Defendant Mueller who ordered him to halt. (*Id.* at p. 30.) Plaintiff immediately ran from

the officer "across the median . . . and ran a couple of blocks . . . down the road" until he was out of breath.[3] (*Id.*)  When he stopped running, Plaintiff stood "kind of like behind a tree" (*id.* at p. 38) and "tried to hide" (*id.* at p. 79).  Defendant Mueller, now joined by Defendant Noe, arrived at the place where Plaintiff was trying to hide.  Plaintiff, with raised hands, started walking towards the police.  (*Id.* at pp. 38, 40.)  Plaintiff did not say anything to the officers as he walked towards them (*id.* at p. 81) nor did the officers say anything to him (*id.* at p. 39).  Defendant officers "put [Plaintiff] on down to the ground" (*id.* at p. 39), or "pushed [Plaintiff] to the ground like tackling [him] to the ground" (*id.* at p. 41) during which he was injured (*id.* at p. 43) ("Q. What got hurt when you landed on the ground? A. My . . . they messed up my . . . these two sides right here (indicating) in the back. Q. Your ribs? A. Yeah . . . [a]nd my back . . .").

Defendants held one of Plaintiff's hands behind his back, but the other hand was "underneath [his] belly."  (*Id.* at p. 42.)  While on the ground, Plaintiff was hit in the back with an unknown object.  (*Id.* at p. 46.)  The Defendants had to pull Plaintiff's arm from underneath him in order to place it into handcuffs.  (*Id.* at p. 48.)  Plaintiff was eventually placed into handcuffs and detained in a police cruiser without further incident.  (*Id.* at p. 49-50.)  As an apparent result of these events, Plaintiff suffered two broken ribs and a fracture to the traverse process of three lumbar vertebrae.  (*Id.* at p. 43-44; Ex. 2.)

Even when drawing all reasonable inferences in Plaintiff's favor, the court concludes Defendants did not use excessive force in forcing Plaintiff to the ground.

---

[3] Although it is not pertinent to the court's analysis, the court summarizes here Plaintiff's curious explanation about the *reason* he ran from the officer when he was told to stop.  He said he was "scared and nervous" (Pl.'s Resp., Ex. 1 at p. 35) about what the officer might do based on his memory of the experience of a friend of his who twenty-seven or twenty-eight years ago "did some stuff [and] ran from the Lincoln Park Police" during which they "shot him" (*id.* at p. 36).  In short, decades earlier a friend ran from the police and was shot, so Plaintiff decided to run from the police, too.

9

Paying careful attention to the facts and circumstances of this case, *Graham*, 490 U.S. at 396, the court observes a suspect who exactly matched the description of a bank robber, near the location of the recent robbery, who immediately evaded police upon being ordered to halt.  Certainly, bank robbery is a dangerous crime, one that often involves the use of dangerous weapons.  *See, e.g.*, *Guy v. Riverside Police Officers*, No. 98-C-3741, 1999 WL 675296, *5 (N.D. Ill. Aug. 18 1999) ("The officers believed that [the defendant] had just robbed a bank – a very serious, violent, and dangerous crime."), *see also* Mich. Comp. Laws § 750.531 (Bank robbery "punishable by imprisonment in the state prison for life or any term of years.")  That fact, well within the knowledge of a reasonable police officer, would be enough to give him pause upon approaching a suspect.  Plaintiff's admitted flight from the officers and his subsequent attempt to avoid detection could only elevate an objectively reasonable officer's already heightened anticipation of harm from a suspected bank robber.  Further, once "cornered," Plaintiff began walking towards Defendants.  Plaintiff said nothing to assure the Defendants he intended to surrender.  Of course, Plaintiff did have his hands raised.  But, although raising one's hands is a gesture of surrender, it need not be interpreted by a reasonable officer as absolute, unequivocal or irrevocable.  *See, e.g.*, *Carswell v. Borough of Homestead*, 381 F.3d 235, 238 (3d Cir. 2004) ("[The suspect] raised his hands in a surrender gesture, but then suddenly jumped over the porch railing and ran into the darkness."); *Wylie v. Overby*, 05-CV-71945, 2006 WL 1007643, *8 (E.D. Mich. Apr. 14, 2006) ("[A]n assaultive subject trying to escape who suddenly turns and raises his hands to shoulder height could as easily be assuming an aggressive posture in preparation for fighting as trying to indicate a surrender.  The most Plaintiff could argue at trial is that he had changed his mind about escaping.  He cannot reasonably argue

10

that any officer who saw him in action *must* be held to have known what he was thinking.") The dangerous bank robber whom Defendants believed Plaintiff could be might simply drop his hands and produce the weapon with which he had so recently used in the robbery. Or a suspect might drop his hands and charge toward police to engage them or to further evade capture. The Defendants, acting in the prototypical "tense, uncertain, and rapidly evolving" situation, *Graham*, 490 U.S. at 397, forced Plaintiff to the ground. The decision to take Plaintiff down, in the context of these circumstances as a whole, cannot be reasonably claimed to constitute excessive force. *See Goodrich v. Everett*, 193 F. App'x 551, 554 (6th Cir. 2006) (Defendant officers did not use excessive force in taking Plaintiff to the ground where he "engage[d] in ambiguous conduct that may be consistent with surrender.").

Nor does the court find that Plaintiff's allegation that he was hit in the back during the time he was on the ground, taken as true in this summary judgment posture, to constitute excessive force. The court recognizes that there is a distinction "between the amount of force that is reasonable before a subject is subdued and the amount of force, if any, that is reasonable after a subject is under police control." *Id.* at 556; *Cox v. Treadway*, 75 F.3d 230, 234 (6th Cir. 1996). At the time Plaintiff describes being hit, however, Defendants had not yet secured his other hand. Plaintiff said he was unable to give up his hand because it was pinned beneath his body. (Pl.'s Resp., Ex. 1 at p. 42.) This, however, remains a subjective fact unknown to the Defendants, as Plaintiff admits he said nothing while pinned to the ground – i.e., he does not claim that he told Defendants that his arm was trapped. (*Id.* at pp. 81-82.) More importantly, although the facts are to be viewed in a light most favorable to Plaintiff here, it is not from the arrestee's perspective that the court evaluates the reasonableness of the steps taken in

11

this case, but rather the perspective of an objectively reasonable officer. *Goodrich*, 193 F. App'x at 555 (citing *Dunigan v. Noble*, 390 F.3d 486, 493 (6th Cir. 2004)). Here, the undisputed and objectively known facts show that Plaintiff was a suspected bank robber who, after running and hiding, suddenly emerged and approached the pursuing officers with his hands raised. Although he was soon pinned to the ground, Plaintiff still had one hand free and cannot be said to have been completely neutralized or subdued. Plaintiff, with his hand hidden beneath his body, could have been interpreted as able to produce a weapon once his hand was freed. Indeed, the situation is remarkably similar to that of *Goodrich*, in which the Sixth Circuit found that similar conduct did not constitute excessive force:

> Taking the evidence in the light most favorable to Goodrich, the kneeing and kicking occurred not when Goodrich was neutralized, but while the officers were handcuffing him. Even assuming that Goodrich had been incapacitated merely by the officers' tackling him, Goodrich presents no evidence that such a fact was clearly communicated to the officers in the midst of the take-down. Although Goodrich states that he was not resisting the officers during the take-down, this subjective intent to cooperate, absent any evidence that he clearly communicated that intent to the officers and given the totality of the circumstances that would suggest an opposite intent, is insufficient to overcome the "built-in measure of deference to the officer[s'] on-the-spot judgment about the level of force necessary."

*Goodrich*, 193 F. App'x at 556 (quoting *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002)). Likewise here, some degree of physical force was reasonably needed in attempting to coerce Plaintiff to give up his hidden hand. The "hit" vaguely described by Plaintiff in his deposition happened, according to Plaintiff, in the process of the officers applying the handcuffs, i.e., before he was neutralized. If bones were broken during the arrest, it may have been that "hit" which produced the fractures or just the force used in

taking him to the ground in the first place. The record does not clearly speak to either as a cause, but in the light of the other admitted and uncontested facts, the court concludes that Defendants Mueller and Noe did not use excessive force, either in subduing Plaintiff or while attempting to handcuff him once he was on the ground, including doing whatever it was that Plaintiff interpreted as being "hit" during their effort to gain control of his hands. Because the court finds Defendants did not exhibit excessive force in arresting Plaintiff, the court need not reach the question as to whether Defendants' actions were protected by some form of qualified immunity.

### C. Municipal Liability

Plaintiff also alleges Defendant City of Lincoln Park ("City") maintains "a policy or practice of engaging in the systemic deprivation of civil rights" in violation of 42 U.S.C. § 1983. (Pl.'s Compl. at 7.) Specifically, Plaintiff bases his claim of municipal liability "upon [City's] failure to investigate/inaction" (Pl.'s Resp. at 20) the alleged excessive force used during Plaintiff's arrest. Defendants, in their current motion, argue that Plaintiff has no proof to establish a "specific failure on behalf of [City]" and that Plaintiff provides only "bare allegations." (Defs.'s Mot. at 18.) Plaintiff responds that both Defendant officers admitted, under oath, that "no investigation of plaintiff's claims of excessive force were ever undertaken by [City.]" (Pl.'s Resp. at 20.) As support, Plaintiff cites to *Marchese v. Lucas* in which municipal liability was imposed after a county sheriff, informed of a beating in his station house, failed to perform any investigation into the event. 758 F.2d 181, 188 (6th Cir. 1985). That case, though, is inapplicable here for two reasons. First, as Defendant declares, Plaintiff has offered no evidence that any complaint was ever made to the City or its Police Department

13

following this incident. Plaintiff is arguing that the City faces municipal liability for its failure "to investigate a complaint against the officers that was never made by Plaintiff." (Defs.'s Reply at 4.) Plaintiff's argument, in effect, would impose strict liability upon City in excessive force cases. The court does not agree *Marchese* stands for such a proposition. Second, for the reasons discussed at length above, the court finds Defendant officers did not use excessive force in subduing and arresting Plaintiff. As such, even if the court found City had a duty to investigate without knowledge of the incident, the incident itself could not give rise to municipal liability under 42 U.S.C. § 1983. For both reasons, the court will grant Defendants' motion for summary judgment on Plaintiff's claim of municipal liability.

## IV.  CONCLUSION

IT IS ORDERED that Defendants' "Motion for Summary Judgment" [Dkt. # 18] is GRANTED.

                                    S/Robert H. Cleland
                                    ROBERT H. CLELAND
                                    UNITED STATES DISTRICT JUDGE

Dated:  March 6, 2009

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 6, 2009, by electronic and/or ordinary mail.

                                         S/Lisa G. Wagner
                                         Case Manager and Deputy Clerk
                                         (313) 234-5522